**March 18, 2022**

# In the Court of Appeals of Georgia

A22A0219. WILLIAMS v. JAMONT et al.

BROWN, Judge.

This action alleges various improprieties related to the sale and financing of a home purchased by plaintiff Sonja Williams from John Jamont. Williams asserted various claims against Jamont, Jamont Homes, Inc., 2210 Atlanta, LLC, and Tripac General Contractors, Inc. (collectively "Defendants"), including wrongful foreclosure, attempted wrongful foreclosure, breach of contract, and fraud.[1] The trial court granted summary judgment to Defendants and Williams appeals. Williams also

---

[1] While this action was pending, Jamont filed a dispossessory action against Williams in the Magistrate Court of Fulton County; Williams filed a counterclaim. The magistrate court granted a writ of possession and transferred Williams' counterclaim to the superior court. Williams also filed an appeal of the writ of possession to the Superior Court of Fulton County. The parties agreed to consolidate the two cases.

appeals the trial court's grant of Defendants' motion for writ of possession and its denial of Williams' motion for default judgment.[2] Because Williams is bound by her admissions in this case, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Blount v. College Glen Condo. Assn.*, 362 Ga. App. 133 (866 SE2d 843) (2021). So viewed, the record shows that on July 2, 2017, Williams as the "Buyer" and Jamont, on behalf of 2210 Atlanta, LLC, as the "Seller" executed a Purchase and Sale Agreement for the sale of 822 Jamont Circle, for the purchase price of $800,000. Williams put down $50,000 in earnest money and agreed to put down an additional $30,000 for a total down payment of $80,000. 2210 Atlanta agreed "to finance the rest of the purchase price at [5 percent] amortized over 30

---

[2] Although Williams' notice of appeal states that she is appealing the order denying her motion for default judgment, she does not raise the ruling in her brief. Accordingly, she has abandoned any challenge to it on appeal. See *Blalock v. Cartwright*, 300 Ga. 884, 889 (III), n.4 (799 SE2d 225) (2017).

years and payoff in [35 months]." An Amendment to the Purchase and Sale Agreement provided that Williams released 2210 Atlanta from its "obligation to make any improvements to the basement beyond the condition that it was sold at the time of closing (unfinished)."

Williams closed on the property on July 18, 2017. The attorney who conducted the closing on the property averred that a true and correct copy of the Closing Statement reflected a purchase price of $900,000, which included a $100,000 credit for the unfinished basement, and that both Williams and Jamont agreed to the figures and calculations in the Closing Statement. The attorney also explained the Promissory Note to Williams and described its terms before observing Williams sign the Note. The Promissory Note provided that Williams promises to pay Jamont

> the principal sum of [$720,000] with interest on the outstanding principal balance of this Note until fully paid at a rate of **five percent (5.0%)** per annum with monthly principal and interest payments of **three thousand eight hundred sixty-five and 12/100 Dollars ($3,865.12)**. Payments shall be made monthly beginning on **August 28, 2017,** and continuing the eighteenth day of each month thereafter. The entire unpaid principal balance hereof, together with all accrued interest thereon, shall be due and payable in full on **June 18, 2020.**

3

(Emphasis in original.) After Williams signed the Note, the attorney explained to her the Security Deed and Williams executed that document in her presence. The Security Deed provided the collateral to the loan and provided Jamont the legal right to foreclose on the property. Williams never expressed any questions or concerns about any of the documents.

After Jamont allegedly began foreclosure proceedings against her, Williams filed a verified complaint on July 18, 2019, alleging various claims as follows: (1) wrongful foreclosure and attempted wrongful foreclosure against Jamont; (2) breach of contract as to 2210 Atlanta for failing to extend financing and failing to make necessary repairs to the home; (3) fraud as to Jamont in that Williams alleges that she was presented with a closing statement which reflected a purchase price of $900,000 which Jamont advised that he would change to reflect the correct amount of $800,000 and provide it to her, but that he never did, and that Jamont forged Williams' signature on the Note; (4) piercing the corporate veil as to all Defendants; and (5) attorney fees as to all Defendants.

Defendants filed a verified answer and counterclaim for fraud and breach of contract, and a motion to dismiss for failure to state a claim. In their answer and counterclaim, Defendants alleged that Williams had made a total of eighteen

4

mortgage payments and was behind eight mortgage payments, and that she had failed to pay two years of real estate property taxes. In their motion to dismiss, Defendants explained that Williams purchased the property for $900,000, and that she received a $100,000 credit toward purchasing the property in exchange for releasing 2210 Atlanta from the obligation of finishing her basement; "[b]ecause of this reason, [Williams] was able to afford the house." Williams put down $80,000 and Jamont agreed to owner-finance the remainder of the $720,000 loan. Defendants also alleged that Williams filed for bankruptcy in an effort to "hinder the foreclosure of the Subject Property."

The trial court entered a consolidated scheduling order on October 21, 2019, and gave the parties until June 22, 2020, to complete discovery.[3] In the meantime, as noted in footnote 1, supra, on January 13, 2020, Jamont filed a dispossessory action against Williams in magistrate court, alleging that she was occupying the property as

---

[3] On March 14, 2020, in response to the COVID-19 pandemic, the Chief Justice of the Supreme Court of Georgia declared a statewide judicial emergency pursuant to OCGA § 38-3-61 et seq. Pursuant to the emergency order initially issued on that date, deadlines imposed on courts were suspended and tolled. On June 12, 2020, the Third Order Extending the Declaration of Statewide Judicial Emergency announced a plan to reimpose all deadlines and other time schedules and filing requirements for four months for cases that were pending before the March 14 Order. Accordingly, the date for the end of discovery was now October 22, 2020.

a tenant at sufferance. Williams filed a counterclaim. On February 12, 2020, the magistrate court granted Jamont a writ of possession and transferred Williams' counterclaim to the superior court. Williams also filed an appeal of the writ of possession to the Superior Court of Fulton County. Subsequently, the parties filed a joint motion to consolidate the dispossessory action and Williams' wrongful foreclosure action and on November 20, 2020, the trial court agreed, issuing a "Consent Order of Consolidation."

On August 6 and 12, 2020, Jamont served on Williams his first requests for admissions, interrogatories, and requests for production of documents. On September 28, 2020, 2210 Atlanta served on Williams its first requests for admissions, interrogatories, and requests for production of documents.[4] On October 7, 2020, Jamont Homes served on Williams its first requests for admissions, interrogatories, and requests for production of documents. Williams failed to respond. Defendants filed a motion for summary judgment on December 17, 2020. Following a hearing, the trial court granted the motion, ruling that "[b]ecause [Williams] neither objected

---

[4] On October 2, 2020, Defendants filed a motion for amended scheduling order asking that discovery be extended until January 1, 2021. Defendants noted that Williams had not yet responded to Jamont's discovery requests and that the other defendants were propounding additional discovery. There is nothing in the record reflecting that the trial court ever granted this request.

to nor denied the requests for admissions, they are deemed admitted as a matter of law. As a result of these admissions, there are no material issues of triable facts and Defendants are entitled to judgment as a matter of law." Williams filed a motion for reconsideration, arguing that Defendants were required to file their discovery requests within the discovery period so that the responding party has the required time to respond within the discovery period, and that Defendants tacitly admitted their own mistake by filing their motion for amended scheduling order. In her motion for reconsideration, Williams asked that the court give her an opportunity to withdraw the requests for admissions. The trial court did not rule on the motion for reconsideration.

A month later, the trial court issued an order granting Jamont's motion for writ of possession, ruling that the court had considered Williams' appeal of the dispossessory action and her claims in both actions, and that the court determined that, as a matter of law, Defendants were entitled to judgment on all claims. It therefore concluded that "[t]here is no other legal or factual basis to find that [Williams] has any legal right to remain at the property and [Jamont] is entitled to a writ of possession . . . *instanter*." The trial court also denied Williams' motion for default judgment on the ground that Defendants were not required to file an answer

7

to Williams' appeal/transfer of the dispossessory action because the record contained no evidence that a summons was ever issued much less served. This appeal followed.

1. Williams contends generally that the trial court erred in granting Defendants' motion for summary judgment.

(a) Relying on *Bartosz v. Chapparal Enterprises*, 271 Ga. App. 246 (609 SE2d 185) (2005) and *Nat. Bank of Ga. v. Hill*, 148 Ga. App. 688 (252 SE2d 192) (1979), she argues specifically that the trial court erred in granting the motion based on admissions that were "never introduced by Defendants or admitted into evidence[.]" Williams' reliance on those cases and this legal principle in this case, however, is misplaced. Both of those cases involved trials where a jury or judge sat as the trier of fact. This case involves a motion for summary judgment. The trial court does not sit as the trier of fact on a motion for summary judgment; rather it determines whether any such issues of material fact exist that must go to a jury. The situation here is thus wholly inapposite from *Bartosz* and *Hill*. Accordingly, we find no merit in this enumeration of error.

(b) Williams also contends that the trial court erred when it ruled that she was required to respond to Defendants' untimely requests for admissions. In particular, Williams takes issue with the requests for admissions served by defendant Jamont

8

Homes on October 7, 2020, because the allotted 30 day-time period to respond to those requests fell outside the discovery deadline of October 22, 2020; as Williams sees it, "Defendants were required to serve [their] discovery requests in a manner that allotted [her] the requisite amount of time to respond . . . prior to the end of the discovery deadline." She also claims, however, that Defendants served their requests for admissions well after the June 22, 2020, discovery deadline.

At the outset, it is important to make clear as we do in footnote 3, supra, that the Chief Justice's emergency order extended the discovery deadline in this case to October 22, 2020; it was not June 22, 2020, as Williams posits. While we are cognizant of the confusion and difficulties that may have resulted within the courts from the emergency orders, Williams' pro se status does not excuse her from knowing the rules and procedures of the courts. As this Court has held, a pro se litigant's status "affords [her] no basis for relief since in a civil case, the court cannot put a pro se litigant on a different standard from one represented by counsel." (Citation and punctuation omitted.) *Turner v. Mize*, 280 Ga. App. 256, 259 (1) (633 SE2d 641) (2006).

Turning to the merits of Williams' argument, OCGA § 9-11-36 governs requests for admissions. It provides that a party may serve upon another party a

9

written request for the admission of the truth of any matter that is not privileged and is relevant to the pending action. See OCGA § 9-11-36 (a) (1). See also OCGA § 9-11-26 (b) (1). OCGA § 9-11-36 (a) (2) further provides: "[t]he matter is admitted unless, within 30 days after service of the request or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection" *or* requests "deferment of its obligation to respond to the requests, *or* seek[s] a protective order." (Emphasis supplied.) *G. H. Bass & Co. v. Fulton County Bd. of Tax Assessors*, 268 Ga. 327, 330 (2) (486 SE2d 810) (1997). If a party fails to avail itself of any of these remedies, "[a]ny matter admitted under this Code section is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission." OCGA § 9-11-36 (b). "The court may permit withdrawal or amendment if it will subserve the presentation of the merits of the action and if the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice his action or defense." *Bartosz*, 271 Ga. App. at 248 (1).

In this case, Williams did not move for a protective order or for an extension of time to respond to the discovery requests.[5] It was only after the trial court granted summary judgment to Defendants that Williams sought to withdraw the admissions in her motion for reconsideration, which was never ruled on by the trial court before Williams filed this appeal and the trial court lost jurisdiction of the case. "Because [Williams] did not avail [herself] of any of the variety of responses available under OCGA § 9-11-36 and chose not to seek the liberal remedies afforded to parties under the statute to avoid the consequences of a failure to respond, we hold that the subject matter of [Defendants'] requests for admission[s] stood admitted." *G. H. Bass & Co.*, 268 Ga. at 331 (2). See also *Blount*, 362 Ga. App. at 134-135 (1); *Adewumi v. Amelia*

---

[5] In this regard, we note that Williams' reliance on cases such as *Lake v. Ray*, No. 1:13-CV-03960-ELR, 2015 WL 13755448, at *7 (N.D. Ga. September 23, 2015), is misplaced. While the court in that case concluded that discovery was not served upon the defendant with sufficient time for him to respond within the existing discovery period, and did not require the defendant to comply with the requests, the defendant in that case *had moved for a protective order*. See also *Maddox v. Kincaid Generation LLC*, No. 04-3125, 2006 WL 288411, at *1 (C.D. Ill. February 7, 2006). Here, Williams never moved for a protective order. Accordingly, those cases are not dispositive. And, the other cases involve discovery requests made months or a year after expiration of the discovery deadline, which is not the situation here. See, e.g., *Fournier v. Erickson*, 242 FSupp.2d 318, 334 (II) (C) (S.D.N.Y. 2003) (discovery request made one year after expiration of discovery deadline); *Siao-Pao v. George*, No. 90 Civ. 5376 (PKL), 1992 WL 236184, at *1 (S.D.N.Y. September 10, 1992) (discovery request made four months after expiration of discovery deadline).

11

*Grove/Ashland Park Homeowners Assn.*, 337 Ga. App. 275, 277-278 (2) (787 SE2d 761) (2016).

(c) Williams next argues that the trial court abused its discretion when it tacitly relieved Defendants of the burden of the discovery rules while simultaneously holding her — as a pro se litigant — to the letter of the rules. This enumeration is without merit for the same reasons discussed above: The discovery deadline had not expired when the requests were served on Williams and the burden was on Williams to seek the liberal remedies afforded to parties under the statute to avoid the consequences of a failure to respond to discovery regardless of her pro se status. As we noted above — and under either scenario, i.e., whether she believed the discovery deadline expired on June 22, 2020, or October 22, 2020 — Williams could have moved for a protective order when she was served with the requests for admission either after the deadline or when Defendants served the requests without giving her ample time to respond before the deadline expired. Morever, in declining to rule on Defendants' motion for amended scheduling order, and instead following the mandates of OCGA § 9-11-36 as set forth in cases such as *G. H. Bass & Co.*, 268 Ga. at 327, the trial court properly exercised its discretion.

12

2. Williams contends that the trial court erred in granting Jamont a writ of possession. In its February 8, 2021 order, the trial court noted that the February 14, 2020 magistrate court's dispossessory order found Williams to be a tenant at sufferance and ordered that:

> If Tenant appeals this Judgment and wishes to remain in possession of the premises, Tenant MUST make the following payments into [the] court registry by the time specified: (1) $2265.76 (which constitutes rent from February 6, 2020 - February 29[,] 2020) no later than SEVEN (7) DAYS from the date of entry of this Order AND (2) MONTHLY RENT of $3,865.12 by the 5th of each month beginning March 2020. Failure to comply shall result in an immediate writ of possession. See OCGA § 44-7-56.

The trial court further noted that Williams made a payment on March 5, 2020, and failed to make payments in April, May, or June 2020, but that on July 13, 2020, she made a payment that was sufficient to cover April through July, 2020. Williams then made an on-time payment in August 2020, and made late payments in September, October, November, and December, but "has not made an on-time payment in compliance with the Magistrate Court Order since August 2020.[6] As a result,

_____

[6] The trial court's order notes that Williams also had failed to pay rent owed for January and February 2021.

13

Defendants are entitled to an immediate writ of possession." Finally, the trial court ruled as follows:

> Regarding the substantive claims raised by Williams' appeal of the Writ of Possession . . ., this [c]ourt is to conduct a de novo review of the claims and proceedings [pursuant to OCGA § 5-3-29.] The [c]ourt has considered the entire record from the magistrate court below and has given [Williams] an opportunity to be heard on her appeal at the January 21, 2021 hearing. Additionally, in considering the summary judgment motion, the [c]ourt considered all of Williams' claims in both cases and determined that, as a matter of law, Defendants were entitled to judgment on them. There is no other legal or factual basis to find that [Williams] has any legal right to remain at the property and Defendant Landlord is entitled to a writ of possession.

(a) Williams contends the trial court erred in granting the writ of possession because the deadline to pay into the court registry was tolled by the Chief Justice's emergency order. She also asserts that "given the opportunity" she would have provided her own payment records to prove that her payments were timely and also defended on the ground that the courthouse was closed for the weekend or because of the pandemic.

Contrary to Williams' contention, it is inconsequential whether the March 14, 2020 emergency order tolled the deadline because the Chief Justice's Third Order

14

Extending Declaration of Statewide Judicial Emergency issued on June 12, 2020 provided that "**[a]ll other deadlines imposed on litigants shall be reimposed effective as of July 14, 2020**," and the trial court's order reflects that Williams made late payments in September, October, November, and December 2020, and also failed to pay rent owed for January and February 2021. As for Williams' claim that she could have countered with her own records as proof of timely payments, waiting until the appeal to raise the issue and "offer" evidence in defense is simply too little, too late.

(b) Although Williams breaks down her remaining arguments into three sections, the crux of her claim is that the trial court erred in relying on the admissions to grant the writ of possession and in failing to hold a hearing pursuant to OCGA § 5-3-30 on "any of [her] counterclaims that [were] a part of [her] appeal" of the dispossessory action. She reiterates that Defendants "at no point" during the summary judgment hearing "proffer[ed] any evidence that could be reviewed, admitted and considered by the trier of fact" as it relates to the counterclaims asserted in her appeal to the dispossessory action.

At the outset, it is important to note that Williams agreed with Defendants to consolidate her appeal of the dispossessory action with her action against all

15

Defendants alleging wrongful foreclosure, attempted wrongful foreclosure, breach of contract, and fraud. The joint motion asked the trial court to consolidate the two actions for purposes of adjudication, asserting that "[t]he two cases involve common questions of law and fact, and it would be in the best interest of judicial efficiency to avoid the unnecessary costs, resources and delays that would result in the cases moving forward for discovery and trial separately." It further asserted, "[i]f the cases are not consolidated, there is a potential for irreparable harm to all Parties to the extent that one case being resolved before the other prevents an expedited remedy if [Williams'] or Defendants' claims are successful."

OCGA § 5-3-30 (a) provides that "[u]pon the filing of an appeal from magistrate court to superior court or state court, the appeal shall be placed upon the court's next calendar for nonjury trial." Moreover, "[s]uch appeals . . . shall be tried by the superior court or state court without a jury unless either party files a demand for a jury trial within 30 days of the filing of the appeal or the court orders a jury trial." Id. See also OCGA § 5-3-29 ("An appeal to the superior court in any case where not otherwise provided by law is a de novo investigation. It brings up the whole record from the court below; and all competent evidence shall be admissible on the trial thereof, whether adduced on a former trial or not. Either party is entitled

16

to be heard on the whole merits of the case."). Accordingly, while Williams is correct about the hearing/trial requirement, by joining in the successful motion to consolidate the two cases and agreeing that the two cases would be adjudicated together, Williams cannot challenge the superior court's failure to hold a separate hearing on the counterclaims she asserted in the dispossessory action. See, e.g., *Hill v. Brown*, 227 Ga. 549, 550 (1) (181 SE2d 840) (1971).

Finally, given our conclusions in Divisions 1 (a) and (b), we find no merit to Williams' claims that the trial court erred in relying on the admissions to grant the writ of possession, and that Defendants "at no point" during the summary judgment hearing "proffer[ed] any evidence that could be reviewed, admitted and considered by the trier of fact" as it relates to the counterclaims asserted in Williams' appeal of the dispossessory action.

*Judgment affirmed. Barnes, P. J., and Hodges, J., concur.*

17